Lucretia Peteros **RICHARDSON**, Plaintiff,

v.

**Dr. Jonathan O. COLE, Superintendent, Boston State Hospital,**

and

**Dr. Milton Greenblatt, Commissioner, Department of Mental Health, Commonwealth of Massachusetts, Defendants.**

No. 69–302–G.

United States District Court
D. Massachusetts.

June 26, 1969.

Ernest Winsor and Stephen H. Oleskey, Hale & Dorr, Boston, Mass., for plaintiff.

Elizabeth G. Verville, Asst. Atty. Gen., Boston, Mass., for defendants.

Before ALDRICH, Circuit Judge, JULIAN and GARRITY, District Judges.

## OPINION

ALDRICH, Circuit Judge.

The plaintiff, after six weeks of employment by the Commonwealth of Massachusetts as a research sociologist at the Boston State Hospital, was informed that she would have to take the oath required of all public employees by Mass. G.L. c. 264 § 14. Upon her refusal, on the assertion that the oath was unconstitutional, she was paid for her services to date and told that no further compensation could be made. She then brought the present suit under 28 U.S.C. § 2281, requesting the appointment of a three-judge district court and a declaration of the statute's unconstitutionality. Named respondents are the Superintendent of the hospital and the Commissioner of the Department of Mental Health, but the Commonwealth was properly served and defends through the Attorney General, and for convenience we will refer to the Commonwealth as the respondent. No question of standing is raised.

The statutorily required oath is as follows.

"I do solemnly swear (or affirm) that I will uphold and defend the Constitution of the United States of America and the Constitution of the Commonwealth of Massachusets and that I will oppose the overthrow of the government of the United States of America or of this Commonwealth by force, violence or by any illegal or unconstitutional method."

A "violation" of section 14, which presumably means a failure to "live up" to the oath, since its phraseology is in the future tense, is a felony. Mass.G.L. c. 264 § 15.

The oath can be conveniently divided into two parts, the first ending with the word "Massachusetts." Plaintiff makes an esoteric analysis of the phrase "uphold and defend" from which she argues that even this part is improper. We consider this argument foreclosed by Knight v. Board of Regents, S.D.N.Y., 1967, 269 F. Supp. 339, *aff'd* 390 U.S. 36, 88 S.Ct. 816, 19 L.Ed.2d 812. While the obligation in *Knight* was to "support" the constitution, traditionally the words "support," "uphold," and "defend" may be regarded as equivalents. *See*, Report of the Attorney General (of Mass.) (1967) pp. 206–07.

Plaintiff takes an equally esoteric word-by-word approach to the second part which, if we were to follow it, would make almost any sentence in the English language ambiguous. A criminal statute is to be strictly interpreted, but this does not mean that common sense is to be jettisoned. In at least one aspect, however, we must agree with plaintiff's position. We find the phrase "oppose the overthrow" fatally vague and unspecific.

The word "oppose" has a number of common meanings, running from the negative, "not favor," or "refrain from," to the affirmative, viz., to take active steps to restrain the conduct of others. Had the statute plainly said the former, we might find it difficult to support the plaintiff's contention that the First Amendment forbade the state from imposing such restrictions upon its employees. This would involve the question whether what, for the ordinary citizen, may be free speech if the approval of violence is sufficiently benign, *cf.* Brandenberg v. Ohio, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (6/10/69), may be forbidden to public employees. *Cf.* Garner v. Board of Public Works of Los Angeles, 1951, 341 U.S. 716, 71 S.Ct. 909, 95 L.Ed. 1317. We might be particularly led to such a restricted meaning of "oppose" by the fact that the statute reads "overthrow" as distinguished from "attempt to overthrow." Obviously if one is speaking in terms of making active opposition to someone else's conduct, it is too late to oppose after there has been an overthrow—the opposition must be to the attempt. On the other hand, if one is speaking of one's personal standards one can favor an overthrow, or not favor it.

However, there is another possible, and in the opinion of at least one member of this court, even more plausible interpretation of the oath. This meaning has, in fact, been embraced by the Commonwealth. In its brief it says,

"[I]n the event that a clear and present danger arose of the actual overthrow of the government, * * * the public employee [would] be required to use reasonable means at his disposal to attempt to thwart that effort. What he might do in such circumstances could range from the use of physical force to speaking out against the downfall of the government. The kind of response required would be commensurate with the circumstances and with the employee's ability, his training, and the means available to him at the time."

In oral argument the Deputy Assistant Attorney General amplified the Commonwealth's position. There were, he asserted, three standards of obligation to take active steps to "oppose" the overthrow of the government by force or violence. The ordinary citizen who has taken no oath has an obligation to act *in extremis*; a person who has taken the first part of the present oath would have a somewhat larger obligation, and one who has taken the second part has one still larger.

We need not explore these undefined boundaries. The very fact that such varied standards, as well as the alternative one of purely negative behavior earlier adverted to, can be suggested is enough to condemn the language as hopelessly vague. It is, of course, well settled that employment cannot be conditioned upon an unintelligible oath. *Cf.* Connally v. General Constr. Co., 1926, 269 U.S. 385, 391, 49 S.Ct. 126, 70 L.Ed. 322; Cramp v. Board of Public Instruction of Orange County, 1961, 368 U.S. 278, 287, 82 S.Ct. 275, 7 L.Ed.2d 285.

Plaintiff is entitled to a declaration that the statute is unconstitutional. She is also entitled to the injunction requested, forbidding the defendants from prohibiting her from discharging her duties at the Boston State Hospital insofar as such prohibition is based upon her refusal to take the oath required by Mass.G.L. c. 264 § 14. We cannot grant her request for back pay.