[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-12827

Non-Argument Calendar

_____

ABBY MARTIN,

Plaintiff-Appellant,

*versus*

CHANCELLOR FOR THE BOARD OF REGENTS OF THE
UNIVERSITY SYSTEM OF GEORGIA,
PRESIDENT OF GEORGIA SOUTHERN UNIVERSITY,
BONNIE OVERSTREET,
Conference Services Manager for Georgia Southern University,
in her Individual Capacity,
MICHEL BLITCH,
Conference Services Coordinator for Georgia Southern University,
in her Individual Capacity,
SANDRA LENSCH,

2                    Opinion of the Court                    22-12827

Conference Services Specialist for Georgia Southern University, in her Individual Capacity,

Defendants-Appellees.

————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:20-cv-00596-MHC

————————————

Before WILSON, BRANCH, and LUCK, Circuit Judges.

PER CURIAM:

Abby Martin appeals the district court's dismissal of her 42 U.S.C. § 1983 suit in favor of Michel Blitch, Bonnie Overstreet, and Sandra Lensch ("Defendants")[1] on the grounds of qualified immunity. She argues that the district court erred in dismissing her claim that Defendants violated her First and Fourteenth Amendment rights by refusing to contract with her to speak at an academic conference unless she signed a clause, required by

---

[1] Martin also brought suit against Steve Wrigley, then-Chancellor for the Board of Regents of the University System of Georgia, and Kyle Marrero, President of Georgia Southern University. However, these claims are not otherwise on appeal, so any reference to "Defendants" hereafter is solely to Blitch, Overstreet, and Lensch.

22-12827                Opinion of the Court                3

Georgia law, promising she would not participate in a "boycott of Israel" for the duration of the contract. Specifically, Martin argues that, because it was clearly established that Defendants should have known that Georgia's law requiring the clause violated the Constitution, they are not entitled to qualified immunity. For the following reasons, we affirm.

## I.        Background

In 2016, the State of Georgia enacted O.C.G.A. § 50-5-85, which prohibits the State from entering into certain contracts unless the contractor certifies that it is not currently engaged in, and agrees for the duration of the contract not to engage in, a "boycott of Israel." § 50-5-85(b). Under the statute, a "boycott of Israel" is defined as "refusals to deal with, terminating business activities with, or other actions that are intended to limit commercial relations with Israel or companies doing business in Israel . . . ." § 50-5-85(a)(1). Under the version of the law in effect at the time of Martin's failed contract, state agencies were required to include such contractor certifications for products or services valued at $1,000 or more. *See* 2016 Ga. S.B. 327; O.C.G.A. § 50-5-85(b) (2016). However, on July 1, 2022, amendments to § 50-5-85 took effect which limits its scope to companies with five or more employees and to contracts valued at $100,000 or more.[2] *See* 2022 Ga. H.B. 383; O.C.G.A. § 50-5-85(b) (2022).

---

[2] Under the statute as amended, individuals and sole proprietors, such as Martin, are eliminated from the statute's coverage. *See* O.C.G.A. § 50-5-85(b).

Plaintiff Martin is a journalist and filmmaker who, in 2019, sought to enter into an agreement with Georgia Southern University to serve as a keynote speaker at an academic conference hosted by the university, for which she was to receive $1,000 and limited travel expenses. Defendants Overstreet, Blitch, and Lensch were all employees of Georgia Southern at the time, and each was involved in coordinating the conference. In their effort to secure Martin as a keynote speaker, Defendants sent Martin a draft agreement regarding her compensation for her review and signature.

Because Georgia Southern is a public university, in 2019, Defendants were required by O.C.G.A. § 50-5-85 to include in the agreement language certifying that Martin was not engaged in, and for the duration of the agreement would not engage in, a boycott of Israel. Martin, who describes herself as a member of the "Boycott, Divestment, and Sanctions movement" ("BDS movement"), a political boycott of Israel, refused to sign the agreement because of the inclusion of the certification language. As a result, Georgia Southern did not enter into the contract with her to keynote the conference, as doing so without the certification language would have violated Georgia law. The conference was later cancelled by its organizers.[3]

Martin filed suit, asserting various First and Fourteenth Amendment claims. Specifically, she claimed that O.C.G.A. § 50-

---

[3] Organizers claimed the cancellation of the conference was their "statement" in protest of O.C.G.A. § 50-5-85.

5-85 restricts protected speech and compels speech in violation of the First Amendment and is unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment; she sought injunctive and declaratory relief against Steve Wright, then-Chancellor for the Board of Regents of the University System of Georgia, and Kyle Marrero, President of Georgia Southern University.[4] She also asserted claims under 42 U.S.C. § 1983 against Defendants in their individual capacities, claiming she suffered a loss of her First and Fourteenth Amendment rights by the inclusion of § 50-5-85's mandatory certification language; she sought damages as relief.

In May 2021, the district court granted in part and denied in part a motion to dismiss filed by Defendants, dismissing Martin's § 1983 claim for damages against Defendants on qualified immunity grounds.[5] Martin timely appealed.

## II.    Discussion

We review a district court's decision to grant a motion to dismiss based on qualified immunity *de novo*, accepting the factual

---

[4] Martin's injunctive and declaratory relief claims are not on appeal.

[5] The district court permitted Martin's First and Fourteenth Amendment official-capacity claims for equitable relief to proceed. However, in July 2022, the aforementioned amendments to § 50-5-85 took effect, which rendered the statute inapplicable to Martin. *See* 2021 Ga. H.B. 383. As a result, the district court dismissed her remaining claims for equitable relief for lack of standing and on mootness grounds. Martin does not challenge this dismissal on appeal. The only claims that remain on appeal are her 42 U.S.C. § 1983 claims for damages against Defendants.

allegations in the complaint as true and drawing all reasonable inferences in the light most favorable to the non-moving party. *Paez v. Mulvey*, 915 F.3d 1276, 1284 (11th Cir. 2019).

"In order to prevail on a civil rights action under § 1983, a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). Martin argues that Defendants' inclusion of the anti-boycott clause, mandated by O.C.G.A. § 50-5-85, violated her First Amendment right to free speech and freedom of expression, as well as her Fourteenth Amendment right to due process. On appeal, she argues that the district court erred in finding that qualified immunity barred her suit against Defendants.

"Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To assert the defense of qualified immunity, Defendants must first show that they were performing a discretionary function. *Barnes v. Zaccari*, 669 F.3d 1295, 1303 (11th Cir. 2012). It is undisputed on appeal that Defendants were acting in their discretionary authority here.

"Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should

not apply." *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quotation omitted). A plaintiff can demonstrate that qualified immunity does not apply by showing (1) that a defendant violated a constitutional right and (2) that the constitutional "right at issue was clearly established at the time" of the alleged violation. *Crocker v. Beatty*, 886 F.3d 1132, 1135 (11th Cir. 2018). The Supreme Court has made it clear that we can address either prong "of the qualified immunity analysis . . . first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

As for the second prong, a constitutional right is clearly established "only if its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Vaughan v. Cox*, 343 F.3d 1323, 1332 (11th Cir. 2003) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "When we consider whether the law clearly established the relevant conduct as a constitutional violation at the time that [the government official] engaged in the challenged acts, we look for 'fair warning' to [the official] that the conduct at issue violated a constitutional right." *Jones v. Fransen*, 857 F.3d 843, 851 (11th Cir. 2017) (quoting *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc)). "'Fair warning' comes in the form of binding caselaw from the Supreme Court, the Eleventh Circuit, or the highest court of the state (Georgia, here) that 'make[s] it obvious to all reasonable government actors, in the defendant's place, that what he is doing violated a federal law.'" *Id.* (quoting *Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000)). There are three

ways a plaintiff can show that a government official had "fair warning":

> *First*, the plaintiff[] may show that a materially similar case has already been decided. *Second*, the plaintiff[] can point to a broader, clearly established principle that should control the novel facts of the situation. *Finally*, the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary.

*Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017) (quoting *Terrell v. Smith*, 668 F.3d 1244, 1255–56 (11th Cir. 2012)).

As we have expressed, "[t]he second and third methods are known as 'obvious clarity' cases," and are "narrow exception[s]" that "don't arise often." *King v. Pridmore*, 961 F.3d 1135, 1146 (11th Cir. 2020) (quotations omitted). And, "[i]n light of the rarity of obvious clarity cases, if a plaintiff cannot show that the law at issue was clearly established under the first (materially similar case on point) method, that usually means qualified immunity is appropriate." *Id.*

Here, our inquiry begins and ends with the "clearly established" prong.[6] Martin invokes all three methods in an

---

[6] Because we conclude that Martin is unable to show that Defendants violated a right that was "clearly established in the specific context of the facts in this case, we do not reach the question of whether Defendants violated [Martin's] constitutional rights." *Jones*, 857 F.3d at 851.

attempt to show that Defendants violated a "clearly established" constitutional right.  We address each method in turn.

### A.    Materially Similar

First, Martin argues that *Cole v. Richardson*, 405 U.S. 676 (1972), is "materially similar" and "clearly establishes" that Defendants' actions were unconstitutional.  We disagree.

To show that a constitutional violation was clearly established by a "materially similar" case, "[a] close factual fit between the pre-existing case and the present one is essential." *Cantu v. City of Dothan, Ala.*, 974 F.3d 1217, 1232 (11th Cir. 2020). Importantly, "[g]eneral propositions from earlier decisions will not do."  *Id.*  Instead, the facts must be close enough to have "placed the statutory or constitutional question beyond debate."  *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011).  The key question is whether the decision in the pre-existing case "make[s] it obvious to all reasonable government actors" that their behavior violates federal law.  *Cantu*, 974 F.3d at 1232 (quotation omitted).

In *Cole*, the Supreme Court considered a Massachusetts law that, as a condition of employment with the Commonwealth, employers were required to swear that they would "uphold and defend" the constitutions of the United States and Massachusetts and "oppose the overthrow of the government of the United States of America or of this Commonwealth by force, violence or by any illegal or unconstitutional method."  405 U.S. at 677–78.  After reviewing several of its prior "oath cases," the Supreme Court held that the Massachusetts oath was constitutional.  *Id.* at 680–87.

Specifically, the Supreme Court noted that the oath's "use of such general terms such as 'uphold,' 'defend,' and 'oppose'" indicates "a commitment not to use illegal and constitutionally unprotected force to change the constitutional system," but did not "impose obligations of specific, positive action on oath takers." *Id.* at 684.

Ignoring that the Supreme Court has made clear that "clearly established law must be 'particularized' to the facts of the case" and "should not be defined at a high level of generality," *White v. Pauly*, 580 U.S. 73, 79 (2017) (quotations omitted), Martin argues that Cole established that "a state-imposed loyalty oath is unconstitutional if it requires oath-takers to take specific actions or refrain from constitutionally protected associational activities."

But *Cole* did no such thing, and *Cole* is not a "close factual fit" with Martin's situation, in two notable respects. *Cantu*, 974 F.3d at 1232. First, *Cole* dealt with the constitutionality of a statute that required Massachusetts employees to swear to defend the constitution and oppose a violent overthrow of the government. The Massachusetts statute is vastly different from a statute like O.C.G.A. § 50-5-85, which requires certain individuals contracting with the State of Georgia to refrain from an economic "boycott of Israel." Martin herself clearly recognizes this key factual distinction—she acknowledges that, unlike the statute in *Cole*, O.C.G.A. § 50-5-85 "required Martin to affirmatively certify in writing—a specific, positive action—that she was 'not currently engaged in' . . . 'a boycott of Israel.'"

While this concession certainly undercuts her argument that *Cole* is materially similar, Martin highlights the fact that O.C.G.A. § 50-5-85 imposes a "positive action" requirement on individuals contracting with the state as a way of aligning it with what the Supreme Court suggested *might* be unconstitutional in *Cole*. 405 U.S. at 684. But Martin glosses over the fact that the Supreme Court's language in *Cole* about a hypothetical "positive action requirement" was not a holding and had nothing to do with the outcome of the case. Instead, the *suggestion* Martin seeks to rely on was mere dicta—and dicta cannot clearly establish law. *See, e.g., Jones v. Cannon*, 174 F.3d 1271, 1288 n.11 (1999) ("This Circuit has held that dicta cannot clearly establish the law for qualified immunity purposes."); *Hamilton v. Cannon*, 80 F.3d 1525, 1530 (11th Cir. 1996) ("The law cannot be established by dicta. Dicta is particularly unhelpful in qualified immunity cases where we seek to identify clearly established law."); *In re United States*, 60 F.3d 729, 731 (11th Cir. 1996) ("Statements of dicta are not part of the law of the case.").

Second, the entire reason Martin seeks to rely on this dicta is because the underlying holding in *Cole* is also a major factual distinction between *Cole* and the present case. Namely, the Supreme Court in *Cole* upheld the Massachusetts statute as constitutional. Martin, on the other hand, is attempting to show the exact opposite of what the Supreme Court held in *Cole*—that O.C.G.A. § 50-5-85 is unconstitutional.

Quite simply, the factual differences between *Cole* and Martin's situation are drastic. Accordingly, Martin has failed to prove that *Cole* is "materially similar" enough to "make it obvious to all reasonable government actors" in Defendants' position that the inclusion of the anti-boycott clause in Martin's contract was unconstitutional. *Cantu*, 974 F.3d at 1232 (quotation omitted). As we have made clear, "[a] close factual fit between the pre-existing case and the present one is essential." *Id.* There is no close factual fit between *Cole* and the facts here. As such, Martin is unable to point to a case with materially similar facts that clearly establishes that Defendants' inclusion of O.C.G.A. § 50-5-85's anti-boycott clause in her contract was unconstitutional.

### B.    Broad Principle

Next, Martin argues that *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982), presents a "broader, clearly established principle that should control the novel facts of the situation." We disagree.

For a broad, clearly established principle to prevent qualified immunity from applying, "the principle must be established with 'obvious clarity' by the case law so that 'every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted.'" *Terrell*, 668 F.3d at 1256 (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1351 (11th Cir. 2002)). In other words, a plaintiff must show that, "in the light of pre-existing law[,] the unlawfulness

22-12827                Opinion of the Court                13

[of the government official's actions] must be apparent." *Id.* (quoting *Anderson*, 483 U.S. at 640).

Contrary to Martin's assertion, Defendants' inclusion of O.C.G.A. § 50-5-85's mandatory anti-boycott clause in her failed contract is not a scenario where a broad principle clearly establishes a constitutional violation. Martin asserts that *Claiborne*, which involved a consumer boycott of white-owned businesses in Mississippi, established the broad principle that the government cannot prohibit nonviolent, politically motivated boycotts and argues that principle "makes clear that [O.C.G.A. § 50-5-85] violates the First Amendment." But although the Court held that the "nonviolent elements of petitioners' activities are entitled to the protection of the First Amendment," the conduct at issue in *Claiborne* involved private actors rather than government officials, and there was no state statute involved in the case. *Claiborne*, 458 U.S. at 915. Notably, the Court expressly reserved the question of whether "a narrowly tailored statute designed to prohibit certain forms of anticompetitive conduct or certain types of secondary pressure may restrict protected First Amendment activity."[7] *Id.* at 915 n.49.

---

[7] While we make no conclusion on the underlying constitutionality of O.C.G.A. § 50-5-85, we also note that the Eighth Circuit recently upheld the constitutionality of a similar anti-"boycott of Israel" statute in Arkansas. *See Ark. Times LP v. Waldrip as Tr. Of Univ. of Ark. Bd. of Trs.*, 37 F.4th 1386 (8th Cir. 2022), *cert. denied*, *Ark. Times LP v. Waldrip as Tr. Of Univ. of Ark. Bd. of Trs.*, No. 22-379 (U.S. Feb. 21, 2023). In doing so, the Eight Circuit emphasized that the key question in *Claiborne* was "whether the activities in support of the boycott,

So, while *Claiborne* did find that the plaintiffs there were engaged in a constitutionally protected activity with regard to their boycott, it did not speak to a state's ability to regulate anti-competitive behavior by state employees via statutes like O.C.G.A. § 50-5-85. Thus, it did not craft a "broad principle" that established with "obvious clarity" that Defendants would know that "every objectively reasonable government official" implementing their state's anti-"boycott of Israel" laws, as Defendants did so here, were violating federal law in doing so. *Terrell*, 668 F.3d at 1256 (quoting *Vinyard*, 311 F.3d at 1351).

Accordingly, Martin is unable to point to a case that makes "apparent" through a broad principle that Defendants' inclusion of § O.C.G.A. 50-5-85's required anti-boycott clause was unconstitutional. *Id.*

---

both peaceful and violent, were protected." *Id*. And, as the Eighth Circuit also noted, *Claiborne* "stopped short of declaring that a 'boycott' itself—that is, the refusal to purchase from a business—is protected by the First Amendment"; expressly acknowledged that "'States have broad power to regulate economic activity'"; and held only that States cannot prohibit the "'peaceful political activity such as that found *in the boycott* in'" *Claiborne*. *Id*. at 1392 (quoting *Claiborne*, 458 U.S. at 913).

While Martin argues that *Waldrip* was erroneously decided, she misses the point—even if it was erroneously decided, the fact that a sister circuit distinguished *Clairborne* and held that a law similar to O.C.G.A. § 50-5-85 is constitutional reinforces the reality that *Clairborne* did not establish with "obvious clarity" that the implementation of such anti-boycott clauses into contracts is unconstitutional. *See Terrell*, 668 F.3d at 1256.

C.    *So Obviously Unconstitutional*

Finally, Martin argues that "Defendants' conduct was so obviously unconstitutional that no specific case is needed to establish it." We disagree.

Where no past case is "materially similar" and a constitutional violation cannot be established through a "broader, clearly established principle," a plaintiff can still show that a defendant is not entitled to qualified immunity by proving that the defendant's conduct "lies so obviously at the core of what the [Constitution] prohibits that the unlawfulness of the conduct was readily apparent to the [defendant], notwithstanding the lack of fact-specific case law." *J W by and through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1259–60 (11th Cir. 2018) (quotation omitted). As we have emphasized, "[c]ases that fall under this narrow exception are rare and don't arise often." *King,* 961 F.3d at 1146. And these situations are frequently reserved for instances where officers exert their physical will on a plaintiff in an "outrageous" way in an obvious violation of the Fourth Amendment. *See e.g.*, *Fils v. City of Aventura*, 647 F.3d 1272, 1291– 92 (11th Cir. 2011) ("Concrete facts are generally necessary to provide an officer with notice of the hazy border between excessive and acceptable force. But, where the officer's conduct is so outrageous that it clearly goes so far beyond these borders, qualified immunity will not protect him even in the absence of case law." (quotations omitted)); *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 (11th Cir. 2000) ("A narrow exception exists to the

rule requiring particularized case law to establish clearly the law *in excessive force cases*. When an excessive force plaintiff shows that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw, the official is not entitled to the defense of qualified immunity." (emphasis added) (quotation omitted)).

Contrary to Martin's assertion, Defendants' inclusion of O.C.G.A. § 50-5-85's mandatory anti-boycott clause in her failed contract is not one of those instances. In light of the fact that the Eighth Circuit has expressly approved the constitutionality of a similar law in Arkansas, *Waldrip*, 37 F.4th at 1392, there is no reasonable argument that the inclusion of the anti-boycott clause in Martin's contract "lies so obviously at the core of what the [Constitution] prohibits that the unlawfulness of the conduct was readily apparent" to Defendants. *J W by and through Tammy Williams*, 904 F.3d at 1260. While another state's law and another circuit's precedent certainly cannot clearly establish law in this circuit, the existence of this law and *Waldrip* demonstrates the ongoing debate about the constitutionality of anti-boycott clauses nationwide. Nor is this an excessive force case where an officer's "outrageous" behavior clearly implicates the Fourth Amendment. Instead, Martin is upset that a contractual obligation was included in a contract she wished to sign for an event that ultimately did not occur. This case is not a "rare" "obvious clarity" case where a plaintiff can show a constitutional violation was clearly established without relying on any caselaw. *See King*, 961 F.3d at 1146.

### III.        Conclusion

Martin has failed to show that it was clearly established that Defendants' inclusion of the anti-boycott clause in Martin's contract, in adherence of O.C.G.A. § 50-5-85, was a constitutional violation. As such, we affirm the district court's grant of Defendants' motion to dismiss on the ground of qualified immunity.[8]

**AFFIRMED.**

---

[8] As a last-ditch effort, Martin argues that we should reconsider and overrule the doctrine of qualified immunity in the First Amendment context. We reject this argument, as we are bound by Supreme Court precedent "until it is overruled, receded from, or in some other way altered by the Supreme Court." *United States v. Henco Holding Corp.*, 985 F.3d 1290, 1302 (11th Cir. 2021).