This appeal brings into question Chapters 21 to 25 of the Laws of 1949. These statutes add to the oath of allegiance found inR.S. 41:1-1 and to the oath pledging support to the constitution, R.S. 41:1-3, the following terms: *Page 242 
"That I do not believe in, advocate or advise the use of force, or violence, or other unlawful or unconstitutional means, to overthrow or make any change in the Government established in the United States or in this State; and that I am not a member of or affiliated with any organization, association, party, group or combination of persons, which approves, advocates, advises or practices the use of force, or violence, or other unlawful or unconstitutional means, to overthrow or make any change in either of the Governments so established; and that I am not bound by any allegiance to any foreign prince, potentate, state or sovereignty whatever."
Sundry classes of persons are required so to swear, and among others, candidates for nomination or for election to the Legislature or to the office of Governor must do so. Persons elected to those offices likewise must take the oath before entering upon the execution of their duties. The appellants, who are candidates for the assembly or for the governorship urge that the Legislature has exceeded its constitutional power in these enactments so far as they relate to the offices to which appellants aspire.
The appellants first rely upon the rule or principle that where the constitution fixes the qualifications for public office, the Legislature may not change them or add new qualifications. A century ago, Justice Story wrote:
"It would seem but fair reasoning upon the plainest principles of interpretation, that when the Constitution established certain qualifications as necessary for office, it meant to exclude all others as prerequisites. From the very nature of such a provision the affirmation of these qualifications would seem to imply a negative of all others * * *. A power to add new qualifications is certainly equivalent to the power to vary them." 1 Story,Commentaries on the Constitution, § 625.
An excellent exposition of this rule of constitutional law may be found in Peo. v. McCormick (Ill.), 103 N.E. 1053 (1913), a case in which a statute requiring, as a qualification for office, five years' residence where the constitution called for only one was overthrown. Upon the same principle, our own Supreme Court struck down a statute disqualifying for public office one convicted of an offense against the election laws. State v.Carrigan, 82 N.J.L. 225 (1912). See, also, *Page 243 Allison v. Blake, 57 N.J.L. 6 (Sup. Ct. 1894). The respondents do not question the general principle on which the appellants rely. They concede, for instance, that the Legislature could not validly enact that a person must be 35 years old to qualify as Governor, instead of 30 years, the age stated in the constitution. But they contend that the statutes under review do not add to the qualifications for office, and in support of their argument, they point to the fact that throughout our history, the Legislature has required certain oaths in addition to the oaths prescribed by our constitution.
In Colonial times, public officers were required to take the oath of allegiance to the British Crown, and the oaths devised by Parliament as a safeguard against the Stuart pretenders and for excluding Roman Catholicism. See Cornbury's Commission andInstructions, Leaming and Spicer, p. 648, etc.; alsoAllinson's Statutes, p. 62. Promptly after the Continental Congress declared our independence, the New Jersey Legislature repealed the Colonial statutes on the subject and instead prescribed a simple oath "that I do and will bear true faith and allegiance to the government established in this State under the authority of the people." Wilson's Laws, p. 1, and Paterson,p. 376. The oath in the form adopted in 1776 has remained unchanged and so appeared in R.S. 41:1-1 until the Legislature adopted the statutes which are now under attack. Not only the form of oath but the requirement that the Governor, as well as members of the Legislature, take the oath, has been retained since the time of the Revolution. Paterson, p. 376. R.S.
41:1-2.
The origin of the oath of allegiance must be sought in remote feudal times. For long centuries, it was a pledge of fealty to the king, but now in our country it is often an expression of devotion to the government. Such an oath is no more than a brief express engagement of that which every citizen impliedly owes to his country. "By allegiance is meant the obligation of fidelity and obedience which the individual owes to the government under which he lives or to his sovereign in return for the protection he receives." Carlisle v. U.S., 16 Wall. 147, 21 L.Ed. 426. The oath of *Page 244 
allegiance "does not increase the civil obligation to loyalty; it only strengthens the social tie by uniting it with that of religion." 1 Blacks. Com. 369. The statutory exaction of the oath of allegiance does not exclude from office any whom the constitution of New Jersey accepts; for all owe allegiance; it neither adds to nor varies the qualifications for office.
In 1920, the Legislature adopted a statute containing a second oath to be taken by every person thereafter elected or appointed to public office. P.L. 1920, p. 413, now found in R.S.
41:1-3. In substance, it is the same oath prescribed by the 1844 constitution for members of the Legislature, to support the Constitution of the United States and of the State of New Jersey, and to perform faithfully the duties of their office. The Federal Constitution, Article VI, directs that all executive and judicial officers of the states and members of the state legislatures "be bound by Oath * * * to support this constitution." What was new in the 1920 oath was the pledge by others than members of the Legislature to support the Constitution of New Jersey and faithfully to perform the duties of office. We would find difficulty in exactly defining the obligation assumed by taking an oath to support the constitution of the state, or of the nation, and we find it unnecessary to make the attempt. Probably the oath no more than states in another form the allegiance to the government that we have been discussing. If it goes farther, it is promissory, relating to the future and not to the past, not even the immediate past. It governs only the actions — and here we include words as acts — and not the secret beliefs or hopes, or attachments of the one who is entering into office. Anyone, whatever his beliefs, may take the oath with clear conscience, provided he is willing, by obedience and by word and deed, to maintain the constitution.
In addition to the oaths intended for the security of the State above mentioned, we have always had oaths of office, intended to charge the conscience of the office holder with the due performance of the duties of his office. For example, see the lengthy sheriff's oath contained in R.S. 40:41-4. *Page 245 
taken from Paterson, p. 201, or the Governor's oath, Paterson,p. 376. R.S. 52:15-2. The last clause of the statutory oath of 1920 and the legislator's oath found in the 1947 Constitution (Article IV, section 8, paragraph 1) is an oath of this kind. An oath of office is somewhat akin to the bond that many public officers must give; it may honestly be subscribed by anyone regardless of his religious or political beliefs, or whether he is a citizen or an alien; it is a promise and assurance of future official conduct; it is not a device for making some persons ineligible for office.
Such are the oaths that respondents urge as precedents. Very different from them is the oath that is proposed by the 1949 statutes: "I do not believe in * * *." It is a test oath intended to divide the sheep from the goats, and to disqualify from office certain classes of citizens, contrary to the provisions of the constitution. The oath is derived from a federal immigration statute, U.S.C.A., Tit. 8, § 137, the very purpose of which is exclusion: "Any alien who" is within one of the condemned classes, "shall be excluded from admission into the United States." That statute has validity because of the general power of the Congress to exclude aliens. U.S. v. Williams,194 U.S. 279, 8 L.Ed. 979. But the Legislature of New Jersey has no similar authority to exclude from the Governorship or from the Senate or General Assembly classes of citizens whom the Legislature — whether rightly or not is immaterial — fears would bring ruin to the State if elected and permitted to act.
The respondents say that no one has a constitutional right to be Governor of New Jersey or a member of the Legislature. We think that he has such a right, provided, of course, the people select him for office and he is eligible according to the constitution. But more important is the right of the people of the State, their right under our democratic system of government to choose whom they will for office, unless the candidate is disqualified by some provision of our constitution. They have the right to select unworthy candidates, candidates whom the Legislature fears might bring ruin to the State. That is an essential part of the *Page 246 
American system. The Legislature has no authority to curb this right of the people. In re City Clerk of Paterson, 88 A. 694 (Gummere, C.J., 1913).
The statutes of 1949 may be subjected to a slightly different test. Our new constitution, Article IV, section 8, paragraph 1, appoints a specific oath for members of the Legislature:
"I do solemnly swear that I will support the Constitution of the United States and the Constitution of the State of New Jersey, and that I will faithfully discharge the duties of senator (or member of the General Assembly) according to the best of my ability."
This is identical with the oath prescribed by the Constitution of 1844, Article IV, section 8, paragraph 1, and substantially the same as the 1920 oath, R.S. 41:1-3. Our present Article VII, section 1.1, also requires every state officer, before entering upon the duties of his office, to take an oath or affirmation "to support the Constitution of this state and of the United States and to perform the duties of his office faithfully, impartially and justly, to the best of his ability." The parties agree that this section of the constitution applies to the office of Governor, and we have no doubt that in this they are correct.
By prescribing an oath intended to secure fidelity to our constitution, which represents our basic democratic institutions, and also the faithful discharge of official duties, the framers of our constitution denied to the Legislature authority to devise any other oath. The constitution sets out the exact words of the oath to be taken by Senators and Assemblymen. The legislators are not permitted to frame their own oaths; here nothing is left to their discretion. The Legislature cannot authorize the omission of the oath or any part of it, or the addition of other clauses or of another oath.
The clause in our constitution respecting the oath of other state officers is differently framed; it sets forth the ground to be covered by the oath, but probably leaves some scope to legislative action. We may surmise, for instance, that the duties of the office may be set forth with some particularity *Page 247 
in the oath. But no oath can be required that does not come within what the constitution prescribes. It is obvious that the oaths set out in Chapters 21 to 25 of the Laws of 1949 do not meet the test.
For the reasons above stated, we hold that Chapters 21 to 25 inclusive of the Laws of 1949 are invalid in so far as they relate to the Governor, Senators and members of the General Assembly, and candidates for those offices. Counsel have argued with earnestness and ability that the statutes also violate fundamental rights of freedom of thought and political belief, and that the use of some words and expressions, the meaning of which is uncertain, is a fatal defect. With much of this argument we incline to agree, calling attention to State v. Klapprott,127 N.J.L. 395 (Sup. Ct. 1941); Morgan v. Civil ServiceCom., 131 N.J.L. 410 (Sup. Ct. 1944); Whitney v.California, 274 U.S. 357, 71 L.Ed. 1095 (1926); Strombergv. California, 283 U.S. 359, 75 L.Ed. 1117 (1931); Lanzettav. N.J., 306 U.S. 451, 83 L.Ed. 888 (1939); Schneider v.Irvington, 308 U.S. 147, 84 L.Ed. 155 (1939); Thornhill v.Alabama, 310 U.S. 88, 84 L.Ed. 1093 (1939); West VirginiaState Board v. Barnette, 319 U.S. 624, 87 L.Ed. 1628 (1942);Schneiderman v. U.S., 320 U.S. 118, 87 L.Ed. 1796 (1942);Thomas v. Collins, 323 U.S. 516, 531, 89 L.Ed. 430, 440
(1944); Saia v. New York, 334 U.S. 558, 92 L.Ed. 1574
(1948); Terminiello v. Chicago, 337 U.S. 1, 93 L.Ed. ___ (1949).
Many other cases might be cited. Their very number is evidence of the continual struggle that must be made to uphold our American liberties.
The judgment is reversed. *Page 248