285 N.J. Super. 516 (1995)
667 A.2d 1057
STEPHEN JOHN GOUGH, PLAINTIFF-APPELLANT,
v.
STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 20, 1995.
Decided November 17, 1995.
*517 Before Judges KING, LANDAU and KLEINER.
Stephen John Gough, appellant, argued the cause pro se.
JoAnn Fitzpatrick, Deputy Attorney General, argued the cause for respondent (Deborah T. Poritz, Attorney General of New Jersey, attorney; Ms. Fitzpatrick, on the letter brief).
The opinion of the court was delivered by KING, P.J.A.D.

I.
Appellant unsuccessfully challenged the statutory oath of allegiance required of school teachers in this State. N.J.S.A. 41:1-1; N.J.S.A. 18A:26-9. He now appeals from the Law Division judgment in favor of the State and claims that New Jersey's traditional statutory oath of allegiance is an unconstitutional threat to his rights of free speech, association, assembly and petition for redress of grievances. We disagree and affirm. We conclude that the traditional statutory oath does not violate the State and federal constitutional rights of speech and expression or inhibit political beliefs or activities.

II.
In September 1991, appellant Gough applied for a substitute-teaching position in the public school system in Neptune Township, Monmouth County. As part of the application requirements, *518 pursuant to N.J.S.A. 18A:6-7[1], N.J.S.A. 18A:26-9,[2] and their implementing regulations, N.J.A.C. 6:11-3.9(a) and N.J.A.C. 6:11-4.5(b), appellant was required to sign an oath of allegiance, which states:
I, ____, do solemnly swear (or affirm) that I will support the Constitution of the United States and the Constitution of the State of New Jersey, and that I will bear true faith and allegiance to the same and to the Governments established in the United States and in this State, under the authority of the people. [*]So help me God. ([*] Not mandatory).
[N.J.S.A. 41:1-1.]
Appellant apparently added to the oath, "qualify[ing]" it before he signed it. His qualifying amendments to the oath are not in the record before us.
Appellant claims that he was interviewed by Assistant Superintendent James Terrell in October 1991 and was "led to believe that eventually [he] would be called to substitute teach." At *519 Terrell's recommendation, appellant spent a day observing classes at Neptune Middle School.
Appellant was never called to substitute teach. He claims that in February 1992 he went to Terrell's office to inquire about his status. Appellant tells us that Terrell's secretary informed him that his application had been approved by the Neptune Township Board of Education in October. However, the secretary allegedly stated that Terrell "voided" appellant's application in December because of the additions appellant made to the oath. Terrell's secretary also allegedly informed appellant that the oath was the only deficiency in his application.
Appellant claims that on two subsequent occasions, in February and May 1992, he contacted Terrell, who provided him with the statutory references to the oath requirement and with the name and address of the State Department of Education's Certification Clerk, Ida Graham. Appellant said that he then began to research the law regarding the oath requirement.
By October 22, 1992 letter, appellant informed Graham about his situation and claimed that he felt "that [he] took reasonable action when faced with the oath form." Appellant also stated that "I believe the oath requirement as presently worded infringes the right to expression of dissent against government, and I still would like to be a substitute teacher and perhaps eventually a full-time teacher." Appellant then asked two questions in the letter: first, whether the statute prohibited an applicant from varying the wording of the oath; second, he asked "if I now, or in the future in conjunction with an otherwise up-to-date and approved application, properly execute the oath ..., that I would receive the teaching certification; is that correct?"
By November 25, 1992 letter, Graham responded (1) "it is correct that the oath of allegiance is statutory and must be enforced accordingly and (2) a properly executed oath is required for the issuance of a certificate." Neither the State's brief nor appellant's brief tell us whether appellant made any further efforts to obtain the substitute-teaching certificate. However, *520 appellant asserts in his brief that he "has been informed that if at some future time, he properly executes the required statutory affirmation/oath, then the teaching certificate will be issued."
Appellant filed this complaint in the Law Division on July 30, 1993 seeking a declaratory judgment "that [N.J.S.A. 41:1-1[3] and -3[4]] are unconstitutional and, specifically, that they violate at least the First and Fourteenth Amendments of the U.S. Constitution, and probably also the Fifth and Ninth Amendments." In September the State moved to dismiss the complaint for failure to state a claim or in the alternative for summary judgment. Judge Ferren heard argument on November 5, 1993. Appellant argued that (1) a public employee "retains a right to express [dissent] against the Government," (2) the oath infringes First Amendment rights; (3) as a result of his "amendments" to the oath, he was denied employment in breach of the State's duty to honor "federally guaranteed rights;" and (4) the oath is vague because it does not "indicate what sort of conduct is prohibited or required."
*521 Appellant also argued the perjury issue. He contended that his fears are not chimerical and that the oath "is taken under the threat of the penalty of perjury for falsely subscribing to the oath." Acknowledging that there has been no recent history of prosecutions for perjury relating to oath-taking, appellant reminded the court of the political environment of the 1950's and of the so-called McCarthy Era "red-baiting" and argued that it "[c]an go on again." Appellant also reminded the motion judge that, as of 1962, "attorneys were no longer required to [take the oath]." Appellant further recalled to the court that in 1967 the Attorney General of New Jersey had recommended that the oath be narrowed to require support of the federal and State constitutions only. Appellant also claimed that the wording of the oath was vague and indefinite, violating "substantive due process."
The Law Division judge observed accurately that appellant was not contesting "that portion of the oath that deals with, "I will support the Constitution of the United States and the Constitution of the State of New Jersey.'" The judge recognized that appellant challenged only the portion of the oath which stated, "I will bear true faith and allegiance to the same, and to the Governments established in the United States and in this State, under the authority of the people."
The judge ruled that appellant's reliance on Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964), was misplaced and that Hosack v. Smiley, 276 F. Supp. 876 (D.Colo. 1967), aff'd, 390 U.S. 744, 88 S.Ct. 1442, 20 L.Ed.2d 275 (1968), controlled. The judge also recalled our opinion in Imbrie v. Marsh, 5 N.J. Super. 239, 68 A.2d 761 (App.Div. 1949), aff'd, 3 N.J. 578, 71 A.2d 352 (1950), in which we recited the history and meaning of loyalty oaths. He ruled that appellant's fear that the oath "will impinge upon his First and Fourteenth Amendment rights" was unfounded and dismissed the complaint for failure to state a claim. R. 4:6-2; R. 4:46-2.

IIIA.  The State Law
This State's first loyalty oath was adopted on September 19, 1776 (1776 oath), and required the affiant to "profess and swear, *522 (or, if one of the People called Quakers, affirm) That I do and will bear true Faith and Allegiance to the Government established in this State under the Authority of the People. So help me God." P.L. 1776, c. 2; Imbrie v. Marsh, 3 N.J. 578, 581, 71 A.2d 352 (1950) (Case and Oliphant, Justices, dissenting). Notably, the 1776 oath, with the addition of "United States," is essentially the same text that appellant is challenging in the present case.
In 1799, the Legislature enacted a law requiring "every person who is or shall be required by law" to take an oath "of fidelity and attachment to the government of this State" which encompassed the wording of the 1776 oath. Id. at 606, 71 A.2d 352 (dissenting opinion). The 1799 law also designated those required to take the oath, including the Governor "for the time being," all elected officials, attorneys, jurors and teachers. Interestingly, the statute provided:
That if any schoolmaster or usher shall neglect or refuse to take and subscribe the said oath of allegiance, for the space of one month after he enters upon the duties of his profession, he shall, for every week after the expiration of the said month that he continues to keep school or teach as an usher, until he shall take and subscribe the said oath, forfeit four dollars, to be recovered by action of debt, with costs, by any person, who will sue for the same.
[P.L. 1799 (Paterson's Laws 376, Sections 1 and 2); Imbrie, supra, 3 N.J. at 607, 71 A.2d 352 (dissenting opinion).]
This oath was "carried forward through successive revisions and compilations into the Revised Statutes of 1937, 41:1-1, N.J.S.A." Id. at 581-82, 71 A.2d 352. The oath underwent several changes between 1949 and 1971. In 1949, during the beginning of what later became known as the "red-baiting McCarthy Era" and the early Cold War period, the Legislature amended the oath. The amended oath began with the still-current language requiring the affiant to:
[S]olemnly swear (or affirm) that I will support the Constitution of the United States and the Constitution of the State of New Jersey, and that I will bear true faith and allegiance to the same and to the Governments established in the United States and in this State, under the authority of the people;
However, the 1949 oath continued by requiring the following additional language:

*523 and I will defend them [the constitutions and governments] against all enemies, foreign and domestic; that I do not believe in, advocate or advise the use of force, or violence, or other unlawful or unconstitutional means, to overthrow or make any change in the Government established in the United States or in this State; and that I am not a member of or affiliated with any organization, association, party, group or combination of persons, which approves, advocates, advises or practices the use of force, or violence, or other unlawful or unconstitutional means, to overthrow or make any change in either of the Governments so established; and that I am not bound by any allegiance to any foreign prince, potentate, state or sovereignty whatever. So help me God.
[N.J.S.A. 41:1-1, -3; (L. 1949, c. 21 and 22).]
In 1962 the Legislature clarified some of the oath's wording, but made no material changes. L. 1962, c. 202. In a September 1, 1967 opinion, Attorney General Sills advised the Commissioner of Education that the amended 1949 language was unconstitutional. Consequently, in 1971 the Legislature deleted from the oath the language added in 1949. L. 1971, c. 217.
Appellant stresses that the current oath is more than just a formality. In addition to the requirement that a teaching applicant sign the oath as a condition of employment, N.J.S.A. 41:3-1 provides that an affiant will be "deemed guilty of perjury and punished accordingly" if he "willfully and corruptly" falsely swears to the oath. N.J.S.A. 41:3-1. Perjury is a third-degree crime. N.J.S.A. 2C:28-1.
As we have observed, appellant here did not challenge that part of the oath requiring support of and allegiance to the federal and State constitutions. He challenged only the provision requiring that the subscriber bear true faith and allegiance to the same and to the Governments established in the United States and in this State under the authority of the people. He claims these words are ambiguous and imply that the subscriber relinquishes the right to express disagreement with or dissent against the government. He also claims that the wording is vague and overbroad.
Only two New Jersey cases, Imbrie v. Marsh, supra, and Thorp v. Board of Trustees of Schools for Industrial Education of Newark, 6 N.J. 498, 79 A.2d 462, vacated, 342 U.S. 803, 72 S.Ct. 35, 96 L.Ed. 608 (1951), have considered direct challenges to *524 N.J.S.A. 41:1-1 and -3. In Imbrie, candidates for the Assembly and the office of Governor challenged the constitutionality of R.S. 41:1-1 and -3 as amended by the Legislature in 1949 to include the recited language certifying that the affiant did not advocate and was not a member of a group that advocated the use of force or violence to overthrow the government. In Imbrie these challengers argued that the Legislature did not have the authority to add to the qualifications for public office provided by the Constitution of New Jersey and could not add to the oath provided in the Constitution for members of the Legislature and the Governor. Imbrie, 5 N.J. Super. at 242, 68 A.2d 761. We there noted that Article IV, section 8, paragraph 1, required members of the Legislature to "solemnly swear [to] support the Constitution of the United States and the Constitution of the State of New Jersey, and that I will faithfully discharge the duties of senator (or member of the General Assembly) according to the best of my ability." N.J.Const., art. IV, § 8, cl. 1. The New Jersey Constitution also required that "[e]very State officer, ..., shall take and subscribe an oath or affirmation to support the Constitution of this State and of the United States and to perform the duties of his office faithfully, impartially and justly to the best of his ability." N.J. Const., art. VII, § 1; Imbrie, 5 N.J. Super. at 242, 68 A.2d 761.
In Imbrie, we also noted that the Constitution of the United States, Article VI, requires that "Senators and Representatives ..., and the Members of the several State Legislatures, and all executive and judicial Officers, both of the United States and of the several States, shall be bound by Oath or Affirmation, to support this Constitution...." U.S. Const., art. VI, cl. 3; Imbrie, supra, 5 N.J. Super. at 244, 68 A.2d 761. See also U.S. Const., art. II, § 1, cl. 7 (President swears to "faithfully execute the Office of President ..., and ... preserve, protect and defend the Constitution....").
Stating that the "Legislature has no authority to curb [the] right of the people" to elect a constitutionally-qualified candidate *525 for office, we held in Imbrie that the "framers of our constitution denied to the Legislature authority to devise any other oath." Id. at 246, 68 A.2d 761. Therefore, with regard to the "Governor, Senators and members of the General Assembly, and candidates for those offices," we found the 1949 oath unconstitutional. However, with regard to other officers and Article VII, section 1, para. 1, we stated:
The clause in our constitution respecting the oath of other state officers is differently framed; it sets forth the ground to be covered by the oath, but probably leaves some scope to legislative action. We may surmise, for instance, that the duties of the office may be set forth with some particularity in the oath. But no oath can be required that does not come within what the constitution prescribes.
[Imbrie, 5 N.J. Super. at 246-47, 68 A.2d 761.]
Although the constitutionality of that part of the oath derived from the original 1776 oath was not challenged in Imbrie, we concluded that the original 1776 oath and other such "simple" oaths of allegiance were an "expression of devotion to the government," and that "[s]uch an oath is no more than a brief express engagement of that which every citizen impliedly owes to his country." Id. at 243, 68 A.2d 761. "By allegiance is meant the obligation of fidelity and obedience which the individual owes to the government under which he lives or to his sovereign in return for the protection he receives." Id. (quoting Carlisle v. United States, 16 Wall. 147, 21 L.Ed. 426 (1872)).
Our opinion in Imbrie was affirmed by the Supreme Court. Imbrie, 3 N.J. at 593, 71 A.2d 352. The Supreme Court also discussed but did not specifically rule on limiting the loyalty oath for officers other than legislators and the Governor to that provided in the Constitution. After reviewing the oath's history, including records of debates during the Constitutional Convention of 1844, the Court stated:
In the face of this debate ... the reenactment in P.L. 1846, c. 25 ..., of the [1776 oath], cannot be deemed a contemporaneous construction of the intent of the Constitutional Convention insofar as any statutory oaths for members of the Legislature are concerned. The constitutional oath prescribed for members of the Legislature was exclusive and beyond the power of legislative interference, although the Legislature was still free to prescribe the oath of allegiance for all other *526 officers commissioned by the State, the Constitutional Convention having struck down any constitutional oath for state officers generally.
[Imbrie, 3 N.J. at 591, 71 A.2d 352 (emphasis added).]
In 1951, the Supreme Court upheld the 1949 oath, which had embellished on the 1776 oath, against a constitutional challenge by a teacher whose employment contract was terminated when he refused to take the oath. Thorp, supra, 6 N.J. at 504-05, 79 A.2d 462. The teacher was employed under a contract for one semester, "for a total compensation of $1,800, ...." Id. at 505, 79 A.2d 462. When the teacher refused to take the 1949 oath a week after beginning employment, "his teaching employment was for that reason terminated by the trustees, although he was retained in a non-teaching capacity for the remainder of the contract term at the same salary." Ibid. The Supreme Court disagreed with the teacher's reliance on Imbrie, finding that teachers are not public officers because "[t]eaching in the public schools does not involve the exercise of governmental powers." Id. at 506, 79 A.2d 462.
With regard to the teacher's First Amendment challenge to the 1949 oath, the Thorp Court first said that the "fundamental civil liberties here involved are not absolute.... Government has the inherent right of self-protection against the forces that would accomplish its overthrow by violence." Id. at 508, 79 A.2d 462. The Court further noted that:
The purpose of the oath is not to probe the mind of the teacher for the punishment of unorthodox or heretical views and beliefs, ... but rather to determine the teacher's qualifications for the instruction of youth in the public schools.... There is no interdiction upon the freedom of opinion, no effort to control thought, no censorship nor invasion of the sphere of conscience in matters of religion. The aim is not to stifle beliefs as such, but to disqualify for teaching one who, however capacitated otherwise, believes in the objective of overthrow of the government, Federal or State, by force or violence or other unlawful means.... One so mentally conditioned is deemed unsuited for the instruction of youth.... This constitutes an entirely reasonable accommodation of the fundamental personal rights and the common interest in the safety of Government and the integrity of its educational processes. The Legislature might well find that the teacher would carry that objective into his teaching. Thus, there is no undue infringement of civil liberties; no more than is needful for the essential public welfare.
[Id. at 511-12, 79 A.2d 462.]
*527 The Court maintained that the "purity of the educational process" was "of the highest concern to society." Id. at 513, 79 A.2d 462. The Court also remarked that "[l]oyalty to government and its free democratic institutions is a first requisite for the exercise of the teaching function," ibid., and that the "Legislature may secure youth against indoctrination in the alien ideology of force and violence; and reasonable measures to that end are not obnoxious to the First Amendment." Id. at 514, 79 A.2d 462.
The Thorp Court also found that the 1949 oath was not unconstitutionally vague and that, under R.S. 41:3-1, criminal prosecution for false swearing was not maintainable unless the swearing was "willful and corrupt;" therefore, there was a "reasonably ascertainable standard of guilt comporting with the requirements of due process." Id. at 515, 79 A.2d 462. The Court found, as well, that the statute was not a bill of attainder or an ex post facto law, because the individuals were not being punished for past actions, but instead were "subject to possible loss of position only because there is a substantial ground for the congressional judgment that their beliefs and loyalties will be transformed into future conduct." Id. at 516, 79 A.2d 462.
If Throp were still controlling law, appellant's state-law challenge at this level might well be foreclosed automatically by our Supreme Court's decision in Thorp. But the United States Supreme Court granted certiorari in Thorp, and stated that "[i]t appearing that the cause has become moot, the judgment of the Supreme Court of New Jersey is vacated and the cause is remanded for such proceedings as by that Court may be deemed appropriate." Thorp, 342 U.S. 803, 72 S.Ct. 35, 96 L.Ed. 608 (1951). No further proceedings are extant. Apparently, the United States Supreme Court found the case "moot," at least for federal purposes, because the teacher's contract lasted for one semester and he was retained for that semester in a non-teaching capacity at the same salary. See C. Willard Heckel, Constitutional Law, 6 Rutgers L.Rev. 27, 28 (1951).

*528 IIIB.  The Federal Law
The United States Supreme Court has generally approached First Amendment challenges to loyalty oaths by "balanc[ing] individual rights against the governmental need and purpose, and, where the need and purpose ... justify the restriction imposed by the oath requirement, [by] further scrutiniz[ing] the challenged provision to determine whether its scope and operation in restraining individual liberties are within the limits of constitutional due process." A.M. Vann, Annotation, Validity of Governmental Requirement of Oath of Allegiance or Loyalty  Supreme Court Cases, 19 L.Ed.2d 1333, 1339 (1967). If a "legitimate and substantial" governmental purpose is present, restrictions on First Amendment rights must be narrowly tailored to achieve that end. Keyishian v. Board of Regents of New York, 385 U.S. 589, 602, 87 S.Ct. 675, 683, 17 L.Ed.2d 629, 640 (1967). Under due process analysis, the federal Supreme Court will also consider whether the oath is invalid because of constitutional vagueness. Further, the Court will examine the oath for overbreadth, although "in examining a loyalty oath provision for overbreadth, [the Court] has sometimes appeared to be merely extending its vagueness test." Vann, supra, 19 L.Ed.2d at 1343. Constitutional vagueness of laws affecting First Amendment interests may either result in the absence of fair notice or impose a "chilling" effect on speech. "The fear, in short, is that the `notice' may be too effective." Laurence H. Tribe, American Constitutional Law, § 12-31, at 1034 (2d ed. 1978).
In Cole v. Richardson, 405 U.S. 676, 92 S.Ct. 1332, 31 L.Ed.2d 593 (1972), the United States Supreme Court reviewed prior decisions which involved challenges to oaths and which had resulted in a certain amount of clearly settled law. The Court stated:
We have made clear that neither federal nor state government may condition employment on taking oaths that impinge on rights guaranteed by the First and Fourteenth Amendments respectively, as for example those relating to political beliefs. [citations omitted.] Nor may employment be conditioned on an oath that one has not engaged, or will not engage, in protected speech activities such as the following: criticizing institutions of government; discussing political doctrine that approves the overthrow of certain forms of government; and supporting candidates *529 for political office. [citations omitted.] Employment may not be conditioned on an oath denying past, or abjuring future, associational activities within constitutional protection; such protected activities include membership in organizations having illegal purposes unless one knows of the purpose and shares a specific intent to promote the illegal purpose. [citations omitted.] ... And finally, an oath may not be so vague that "`men of common intelligence must necessarily guess at its meaning and differ as to its application [because such an oath] violates the first essential of due process of law.'" Cramp v. Board of Public Instruction, [368 U.S. 278, 287, 82 S.Ct. 275, [281] 7 L.Ed.2d 285, 292 (1961).] Concern for vagueness in the oath cases has been especially great because uncertainty as to an oath's meaning may deter individuals from engaging in constitutionally protected activity conceivably within the scope of the oath.
[Id. at 680-81, 92 S.Ct. at 1335-36, 31 L.Ed.2d at 599-600.]
The Court has consistently ruled unconstitutional oaths holding affiants "accountable for the beliefs, intentions, or actions of other persons or organizations simply on the basis of [the affiant's] political association or affiliation with those persons or organizations." Vincent Blasi, The Pathological Perspective and the First Amendment, 85 Columbia L.Rev. 449, 461 (1985). In Elfbrandt v. Russell, 384 U.S. 11, 86 S.Ct. 1238, 16 L.Ed.2d 321 (1966), the Court dealt with an oath similar in part to the New Jersey oath. There, the affiant was required to affirm that the affiant would support the federal and state constitutions and the laws of the State of Arizona and "bear true faith and allegiance to the same, and defend them against all enemies, foreign and domestic...." Id. at 12-3, 86 S.Ct. at 1238, 16 L.Ed.2d at 322-23. However, unlike the current New Jersey oath, the "Arizona Legislature ... subject[ed] to a prosecution for perjury and for discharge from public office anyone who took the oath and who `knowingly and wilfully becomes or remains a member of the communist party of the United States or its successors or any of its subordinate organizations' or `any other organization' having for `one of its purposes' the overthrow of the government ... where the employee had knowledge of the unlawful purpose.'" Id. at 13, 86 S.Ct. at 1239, 16 L.Ed.2d at 323. A Quaker teacher declined to take the oath, claiming that she did not understand its meaning, and sued for declaratory relief.
*530 The Elfbrandt Court declared that any oath limiting "mere knowing membership, without any showing of `specific intent'" to achieve an illegal aim, was unconstitutional. The Court observed that an affiant "who is, or thereafter becomes, a knowing member of an organization which has as `one of its purposes' the violent overthrow of the government, is subject to immediate discharge and criminal penalties." Id. at 16, 86 S.Ct. at 1241, 16 L.Ed.2d at 325. The Court found that "[l]aws ... which are not restricted in scope to those who join with the `specific intent' to further illegal action impose, in effect, a conclusive presumption that the member shares the unlawful aims of the organization." Id. at 17, 86 S.Ct. at 1241, 16 L.Ed.2d at 325. Therefore, the Arizona law "threatens the cherished freedom of association protected by the First Amendment...." Id. at 18, 86 S.Ct. at 1241, 16 L.Ed.2d at 325. Accord Keyishian v. Board of Regents of New York, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967). Because the Elfbrandt Court did not address the Arizona oath's wording regarding "true faith and allegiance" to the constitutions and laws or the requirement to "defend them against all enemies," Elfbrandt differs substantially from the case before us.[5]
*531 In Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964), the Court again addressed the constitutionality of a teacher's oath. There, the State of Washington's oath, originating in 1931, required teachers to swear that they would support the federal and state constitutions "and laws of the United States [] and of the State of Washington, and [would] by precept and example promote respect for the flag and the institutions of the United States [] and the State of Washington, reverence for law and order and undivided allegiance to the government of the United States." Id. at 361-62, 84 S.Ct. at 1317, 12 L.Ed.2d at 379. Teachers were further required to "certify," pursuant to a later 1955 statute, that they had read and were "familiar with" Washington's Subversive Activities Act, and that they were "not a subversive person as therein defined." Id. at 365-66, 84 S.Ct. at 1319, 12 L.Ed.2d at 381-82. Teachers were also required to swear that they were not "member[s] of the Communist party or knowingly of any other subversive organization." Ibid. The oath form further required affiants to signify their understanding that the statement and oath were "subject to the penalties of perjury." Id. at 364 n. 3, 84 S.Ct. at 1319 n. 3, 12 L.Ed.2d at 381 n. 3. The Baggett Court found that the "oath requirements and the statutory provisions on which they are based are invalid on their face because their language is unduly vague, uncertain and broad." Id. at 366, 84 S.Ct. at 1319, 12 L.Ed.2d at 382.
The Baggett Court first addressed the provisions of the 1955 law relating to "subversive" persons and members of the Communist party. The Court found that, like the oath in Cramp v. Board of Public Instruction, 368 U.S. 278, 279, 82 S.Ct. 275, 281, 7 L.Ed.2d 285, 287 (1961), requiring teachers to swear that they had never lent their "aid, support, advice, counsel or influence to the Communist *532 Party," the Washington oath "forb[ade] or requir[ed] conduct in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application...." The Court held that the oath violated due process. Baggett, supra, 377 U.S. at 366-67, 84 S.Ct. at 1322, 12 L.Ed.2d at 382.
The Baggett Court did not merely invalidate the provisions affecting "associational" rights, however. The Court also found unconstitutionally vague the portions of the 1931 oath requiring teachers to "promote respect for the flag and the institutions of the United States and the State of Washington." Id. at 370, 84 S.Ct. at 1322, 12 L.Ed.2d at 384. The Court discussed possible examples which "might be deemed inconsistent with the required promise," including refusing to salute the flag and criticizing the flag's design or color. The Court further questioned whether promoting respect for "institutions" prevented a professor "from criticizing his state judicial system or "proscribe[d] advocating the abolition, for example, of the Civil Rights Commission...." Id. at 371, 84 S.Ct. at 1322, 12 L.Ed.2d at 384-85. The Court continued:
It is likewise difficult to ascertain what might be done without transgressing the promise to "promote .. . undivided allegiance to the government of the United States." It would not be unreasonable for the serious-minded oathtaker to conclude that he should dispense with lectures voicing far-reaching criticism of any old or new policy followed by the government of the United States. He could find it questionable under this language to ally himself with any interest group dedicated to opposing any current public policy or law of the Federal Government, for if he did, he might well be accused of placing loyalty to the group above allegiance to the United States.
Indulging every presumption of a narrow construction of the provisions of the 1931 oath, consistent, however, with a proper respect for the English language, we cannot say that this oath provides an ascertainable standard of conduct or that it does not require more than a State may command under the guarantees of the First and Fourteenth Amendments.
[Id. at 372-73, 84 S.Ct. at 1322, 12 L.Ed.2d at 384.]
The Court also explained that teachers "with a conscientious regard for what they solemnly swear or affirm, sensitive to the perils posed by the Oath's indefinite language, avoid the risk of *533 loss of employment, and perhaps profession, only by restricting their conduct to that which is unquestionably safe. Free speech may not be so inhibited." Id. at 372-73, 84 S.Ct. at 1323, 12 L.Ed.2d at 385-86.
Finally, the Baggett Court declined to rely upon "a prosecutor's sense of fairness" to avoid prosecution for constitutionally protected activity "seemingly embraced within the sweeping statutory definitions." Id. at 373, 84 S.Ct. at 1323, 12 L.Ed.2d at 386. The Court determined that "[w]ell-intentioned prosecutors and judicial safeguards do not neutralize the vice of a vague law. Nor should we encourage the casual taking of oaths by upholding the discharge or exclusion from public employment of those with a conscientious and scrupulous regard for such undertakings." Id. at 373-74, 84 S.Ct. at 1323, 12 L.Ed.2d at 386. The Court also rejected the argument that the oath did not violate due process because it involved the promise of future conduct. The Court found that the "future conduct" argument "ignores ... the effect [of the oath]... on those who believe the written law means what it says." Id. at 374, 84 S.Ct. at 1323, 12 L.Ed.2d at 386. In finding the Washington oath unconstitutionally vague, the Baggett Court concluded:
[W]e do not question the power of a State to take proper measures safeguarding the public service from disloyal conduct. But measures which purport to define disloyalty must allow public servants to know what is and is not disloyal.
[Id. at 379-80, 84 S.Ct. at 1327, 12 L.Ed.2d at 390.]
In Whitehill v. Elkins, 389 U.S. 54, 62, 88 S.Ct. 184, 188, 19 L.Ed.2d 228, 234 (1967), the Court found a Maryland teacher's oath invalid because of "an overbreadth that makes possible oppressive or capricious application as regimes change." The Court voided the oath, finding "another classic example of the need for `narrowly drawn' legislation [citation omitted] in this sensitive and important First Amendment area." Ibid. The oath found unconstitutional in Whitehill required teachers to "certify" that they were "not engaged in one way or another in the attempt to overthrow the Government of the United States, or the State of Maryland, or any political subdivision of either of them, by force *534 or violence." Id. at 55, 88 S.Ct. at 184, 19 L.Ed.2d at 230. The oath required affiants to further certify that they understood they were "subject to the penalties of perjury." Id. at 56, 88 S.Ct. at 184, 19 L.Ed.2d at 230. The Court determined that the oath had to be read in conjunction with another Maryland statute defining "subversive" persons and organizations. Id. at 56-57, 88 S.Ct. at 184, 19 L.Ed.2d at 230. The Court found it unclear whether "a member of a group that was out to overthrow the Government by force or violence [could be held] engaged in that attempt `in one way or another' within the meaning of the oath, even though he was ignorant of the real aims of the group and wholly innocent of any illicit purpose." The Court found that it could not answer the question, "nor could a prospective employee know, save as he risked a prosecution for perjury." Id. at 59, 88 S.Ct. at 186, 19 L.Ed.2d at 232.
A few years later, in MacKay v. Rafferty, 321 F. Supp. 1177 (N.D.Cal.) (Hamlin, Circuit Judge, dissenting), aff'd, 400 U.S. 954, 91 S.Ct. 355, 27 L.Ed.2d 263 (1970), a three-judge federal triallevel court declared unconstitutionally vague a California teacher's oath somewhat similar to the oath in Baggett. The oath required teachers to "support" the federal and state constitutions and "laws" to "promote respect" for the flag, law and order, and to pledge "allegiance to the government of the United States of America." Id. at 1177. Unlike Baggett, MacKay did not involve a statute requiring teachers to certify that they were not members of a subversive group. However, the three-judge court found that the California oath was "essentially indistinguishable" from the one declared unconstitutional in Baggett and "permanently enjoined" the oath's use. Id. at 1177-78.
In Cole v. Richardson, 405 U.S. 676, 92 S.Ct. 1332, 31 L.Ed.2d 593 (1972), a four-member majority of the Court (Justices Powell and Rehnquist did not participate) upheld a Massachusetts loyalty oath against constitutional challenge by a research sociologist discharged by a state hospital for refusing to take the oath. There, the oath required of all public employees stated that the *535 affiant would "uphold" the federal and state constitutions and would "oppose the overthrow of the [federal and state] government[s] ... by force, violence or by any illegal or unconstitutional method." Id. at 677-78, 92 S.Ct. at 1333, 31 L.Ed.2d at 598-99.
The Cole Court first reviewed cases upholding "support oaths," i.e., those "addressed to the future, promising constitutional support in broad terms." The Court noted that the "Constitution itself prescribes comparable oaths in two articles." Id. at 681, 92 S.Ct. at 1336, 31 L.Ed.2d at 600. The Court then found it "clear that an oath need not parrot the exact language of the constitutional oaths to be constitutionally proper" and noted that, in an earlier case, the Court had sustained a teacher's oath requiring the affiant to swear to "uphold" the federal and state constitutions. Id. at 682, 92 S.Ct. at 1336, 31 L.Ed.2d at 601; Ohlson v. Phillips, 397 U.S. 317, 90 S.Ct. 1124, 25 L.Ed.2d 337 (1970) (affiants swear to uphold state and federal constitutions and "faithfully perform the duties of the position...."). The Cole Court approved the District Court's language in Ohlson, recognizing that "`ours is a government of laws and not of men,' and that the oath involved an affirmation of `organic law' and rejection of `the use of force to overthrow the government.'" Cole, supra, 405 U.S. at 682, 92 S.Ct. at 1336, 31 L.Ed.2d at 601.
The Cole Court observed that the District Court had "properly... approved" the first clause of the Massachusetts oath requiring affiants to "uphold and defend" the constitutions. However, the Cole majority disapproved of the District Court's "highly literalistic approach" in striking down the clause "oppose the overthrow of the government ... by force, violence or by an illegal or unconstitutional method." Ibid. Instead the Court found that "support" oaths did not "create specific responsibilities" but merely assured "that those in positions of public trust were willing to commit themselves to live by the constitutional processes of our system." Id. at 684, 92 S.Ct. at 1337, 31 L.Ed.2d at 602. The Court found that the second clause of the oath "is a commitment not to use illegal and constitutionally unprotected force to change the constitutional *536 system. The second clause does not expand the obligation of the first; it simply makes clear the application of the first clause to a particular issue." Ibid.
The Cole Court explained that it could not presume that the legislature "intended by its use of such general terms as `uphold,' `defend,' and `oppose' to impose obligations of specific, positive action on oath takers. Any such construction would raise serious questions whether the oath was so vague as to amount to a denial of due process." Id. at 684-85, 92 S.Ct. at 1337, 31 L.Ed.2d at 602. Further, the Court declined to find the oath "void for vagueness" because "the oath is `no more than an amenity.'" Id. at 685, 92 S.Ct. at 1337, 31 L.Ed.2d at 603. The Court found that the oath was "punishable only by a prosecution for perjury and, since perjury is a knowing and willful falsehood, the constitutional vice of punishment without fair warning cannot occur here." Further, the Court found no problem with "the punishment inflicted by mere prosecution" because there had been no prosecution under the statue since its 1948 enactment. Ibid.
Justices Douglas, Brennan, and Marshall dissented in Cole. Justice Douglas found that the "oppose the overthrow" language impinged upon the right to advocate unpopular ideas in the abstract without actively preparing a group for violent action. Id. at 688, 92 S.Ct. at 1335, 31 L.Ed.2d at 604-05. Justice Douglas also noted that the "line between the permissible control by a State and the impermissible control is `the line between ideas and overt acts.'" Id. at 688, 92 S.Ct. at 1339, 31 L.Ed.2d at 605. Because the second clause was unconstitutional, Justice Douglas felt the "entire oath must fall." Id. at 690, 92 S.Ct. at 1340, 31 L.Ed.2d at 606.
Justice Marshall, joined by Justice Brennan, found the oath both unconstitutionally vague and overbroad. Id. at 693-94, 695-97, 92 S.Ct. at 1342, 31 L.Ed.2d at 608, 609-10. Justice Marshall urged that the prevalence of loyalty oaths should not lead the Court to "ignore the difficult constitutional issues that they present. It is the duty of judges, ..., to endeavor to remain sensitive *537 to these issues and not to `encourage the casual taking of oaths by upholding the discharge or exclusion from public employment of those with a conscientious and scrupulous regard for such undertakings.' Id. at 697-98, 92 S.Ct. at 1344, 31 L.Ed.2d at 610.

IV.
In the case presently before us, Judge Farren of the Law Division relied upon Hosack v. Smiley, 276 F. Supp. 876 (D.Colo. 1967), aff'd, 390 U.S. 744, 88 S.Ct. 1442, 20 L.Ed.2d 275 (1968), a 1967 case involving a Colorado teacher's oath. There, the oath simply required teachers to swear to support the federal and state constitutions "and the laws of the State of Colorado and of the United States," id. at 878, an oath not very different than our New Jersey oath. The three-judge District Court panel ruled that the oath was not unconstitutionally vague. In fact, the court stated that the oath was "plain, straight-forward and unequivocal. A person taking it is not left in doubt as to his undertaking. The obligation assumed is one of simple recognition that ours is a government of laws and not of men." Ibid. The court also found that the oath did not curtail expression. "Recognition of and respect for law in no way prevents the right to dissent and question repugnant laws. Nor does it limit the right to seek through lawful means the repeal or amendment of state or federal laws with which the oath taker is in disagreement." Id. at 879.
In comparing the Colorado oath in Hosack with the oath challenged here on this appeal, appellant argues that the "laws" are not the "Government." "The laws are part of the Government, but the Government is a much broader term, encompasses institutions, people, individuals. And to say that one bears true faith and allegiance to the Government, entails a lot more than just saying, one believes in Constitutional processes of Government, and one has respect for law. The Government embraces much more than either the Constitution [or] the laws."
Our research does not reveal a teacher's oath close to or identical with New Jersey's. However, in Socialist Workers Party *538 v. Martin, 345 F. Supp. 1132 (S.D.Tex. 1972), aff'd, 483 F.2d 554 (5th Cir.1973), the three-judge court invalidated portions of an oath required for candidates for public office. There, the oath required candidates to:
[S]wear that I believe in and approve of our present representative form of government, and, if elected, I will support and defend our present representative form of government and will resist any effort or movement from any source which seeks to subvert or destroy the same or any part thereof, and I will support and defend the Constitution and laws of the United States and of the State of Texas.
[Id. at 1134.]
The court first found that the constitutionality of the last clause, "support and defend the Constitution and laws" ... "cannot seriously be questioned." However, the court found that "requiring a candidate to `believe in and approve of our present representative form of government' creates a chilling effect on political beliefs and ideas...." Ibid. The court struck that portion of the oath, but left the "support and defend the Constitution and laws" clause intact. Id. at 1138.
Our assessment of these authorities leads us to affirm Judge Ferren's decision that New Jersey's present statutory loyalty oath does not violate appellant's expressional constitutional rights. Our oath simply requires that he "support the Constitution[s] of the United States and of ... the State of New Jersey, ... and ... bear true faith and allegiance to the same and to the Governments established in the United States and in this State, under the authority of the people." N.J.S.A. 41:1-1. Nothing more is required. There are no ensnaring qualifications of any of the political or personal freedoms granted in the Bills of Rights in either our State or the federal constitution. The very constitutions and governments to which he swears allegiance under the authority of the people are bound by positive law to respect and preserve the personal and political liberties which appellant fears are impugned by the oath. His dilemma is much more personal than realistic, although we cannot dismiss it as idle or chimerical.
We are satisfied that the oath here is very much like the Colorado oath: "I solemnly swear or affirm that I will support the *539 Constitution of the State of Colorado and of the United States of America and the laws of the State of Colorado of the United States," which passed constitutional muster and was upheld by a summary affirmance of the three-judge panel in Hosack v. Smiley, supra. Summary affirmances by the United States Supreme Court are recognized as precedential on the merits. See Mandel v. Bradley, 432 U.S. 173, 176, 97 S.Ct. 2238, 2240, 53 L.Ed.2d 199, 204 (1977); Hicks v. Miranda, 422 U.S. 332, 344, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223, 236 (1975) (lower courts are bound by summary affirmances until the Supreme Court informs them they are not).
Like the Colorado oath, our New Jersey oath is "plain, straight-forward and unequivocal." Hosack, supra, 276 F. Supp. at 878. "A person is not left in doubt as to his undertaking." Ibid. The affiant simply "recognizes that ours is a government of laws and not of men." Ibid. We also agree with Hosack that
Recognition of and respect for law in no way prevents the right to dissent and question repugnant laws. Nor does it limit the right to seek through lawful means the repeal or amendment of state or federal laws with which the oath taker is in disagreement. Support for the constitutions and laws of the nation and state does not call for blind subservience. Such an extreme concept is not now nor has it ever been accepted.
[Hosack v. Smiley, supra, 276 F. Supp. at 879].
MacKay v. Rafferty, supra, 321 F. Supp. 1177, is not here controlling. There the California teacher's oath of allegiance was more generally expressed and thus much more suspect, requiring the affiant to "promote respect for the flag and ... "respect for law and order...." Before starting to teach, an affiant also had further to "subscribe to an oath to support the institutions and policies of the United States during the period of his sojourn within the state." Id. at 1177 fn. 1 (emphasis supplied). The California statute also required that "upon the violation of any terms of the oath or affirmation, the State Board of Education shall suspend or revoke the credential which has been issued." The three-judge federal district court in California found the oath and loyalty scheme were "essentially indistinguishable from the one declared unconstitutional in Baggett v. Bullitt, 377 U.S. 360, *540 [84 S.Ct. 1316] 12 L.Ed.2d [377] 3777 (1964)." Id. We find that New Jersey's oath does not approach that invidious character.
Our federal constitution has "fashioned the principle that the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." Brandenburg v. Ohio, 395 U.S. 444, 447, 89 S.Ct. 1827, 1829, 23 L.Ed.2d 430, 434 (1969). "Mere advocacy," as "distinguished from incitement to imminent lawless action," is always constitutionally protected. Id. at 448-49, 89 S.Ct. at 1830, 23 L.Ed.2d at 434. See also Hess v. Indiana, 414 U.S. 105, 94 S.Ct. 326, 38 L.Ed.2d 303 (1973); Communist Party of Indiana v. Whitcomb, 414 U.S. 441, 94 S.Ct. 656, 38 L.Ed.2d 635 (1974) (loyalty oath as condition of ballot access held unconstitutional); Kingsley International Pictures Corp. v. Regents, 360 U.S. 684, 689, 79 S.Ct. 1362, 1366, 3 L.Ed.2d 1512, 1515 (1959) (license to film conditioned on "sexually moral" ideas improperly denied); Laurence H. Tribe, American Constitutional Law, § 12-9 at 848 (2d ed. 1988).
In light of these and numerous similar constitutional authorities, appellant's right to speak and dissent is fully protected by law. The New Jersey teacher's loyalty oath does not diminish these rights. The oath simply declares allegiance to the State and Federal governments, which are compelled by their fundamental documents to assure appellant's expressional rights.
We consider unrealistic the threat of such criminal prosecutions for perjury postulated by appellant, given the holdings in Brandenburg and Hess, supra. Regarding possible prosecutions, or indeed persecutions, for perjury we recall the comments of the Supreme Court in Cole v. Richardson,
Those who view the Massachusetts oath in terms of an endless "parade of horribles" would do well to bear in mind that many of the hazards of human existence that can be imagined are circumscribed by the classic observation of Mr. Justice Holmes, when confronted with the prophecy of dire consequences of certain judicial action, that it would not occur "while this Court sits." (citations omitted)

*541 [405 U.S. at 685-86, 92 S.Ct. at 1338, 31 L.Ed.2d at 603.]
Appellant's concern about the oath of allegiance to "governments" should be assuaged by the final, conditioning clause "under the authority of the people." The "allegiance" clause simply makes clear the application of the requirement to support the several constitutions established under the authority of the people. This oath goes back to September 19, 1776. It predates most of the Revolutionary War and our federal constitution. It has survived a lengthy time period and many political tides.
We uphold the statutory oath and affirm the judgment of the Law Division.
NOTES
[1] N.J.S.A. 18A:6-7 states:

Every person who is a citizen of the United States, and who is employed as a professor, instructor, teacher or in any teaching capacity by or in any school, college, state college, university or other educational institution in this state which is supported in whole or in part by public funds, directly or through contract or otherwise with or on behalf of the state shall, before entering into the discharge of his duties, take and subscribe to the oath of allegiance and office prescribed in section 41:1-3 of the Revised Statutes, and any person who is a citizen or subject of any other country and who is so employed, shall, likewise, take and subscribe to an oath to support the constitution of the United States while so employed, a copy of which oath shall be filed with his said employer.
[2] N.J.S.A. 18A:26-9 states:

No certificate to teach or supervise in any of the public schools of this state, and no renewal of any such certificate, shall be issued to any applicant unless such applicant shall have first subscribed in duplicate to the oath of allegiance and office prescribed in section 41:1-3 of the Revised Statutes before an officer authorized by law to administer oaths or before a county superintendent or the president or secretary of a board of education of this state and until one copy thereof shall have been filed with the county superintendent and by him transmitted to the commissioner. The other copy of such oath shall be delivered to the applicant and by him to the board, body or person employing such applicant within this state.
[3] N.J.S.A. 41:1-1 states:

Every person who is or shall be required by law to give assurance of fidelity and attachment to the Government of this State shall take the following oath of allegiance:
I, ____, do solemnly swear (or affirm) that I will support the Constitution of the United States and the Constitution of the State of New Jersey, and that I will bear true faith and allegiance to the same and to the Governments established in the United States and in this State, under the authority of the people. [*]So help me God. ([*] Not mandatory).
[4] N.J.S.A. 41:1-3 states:

Every person who shall be elected, or appointed to any public office in this State or in any county, municipality or special district other than a municipality therein, or in any department, board, commission, agency or instrumentality of any thereof, and is required to take and subscribe an oath of office shall, before he enters upon the execution of his said office take and subscribe the oath of allegiance set forth in R.S. 41:1-1 and, in addition, (a) any specially prescribed official oath, or (b) if no text is specially prescribed for such oath of office, the following official oath of office:
"I, ____ do solemnly swear (or affirm) that I will faithfully, impartially and justly perform all the duties of the office of ____ according to the best of my ability. So help me God."
[5] Appellant's complaint also alleges in part:

The present New Jersey Affirmation/Oath of Allegiance conflicts with another New Jersey teaching application form that requires applicants to answer yes or no to the question: "Are you now or have you ever been a member of any party or organization, political or otherwise, that now or has advocated the overthrow of the Government of the United States or the State of New Jersey by force of violence or unlawful means? If your answer is yes, please list the party or organization." The applicants must subscribe to a statement: "I affirm the information on this form is accurate and correct." Applicants complete these application forms under the reasonable belief that a failure to answer "no" will result in deprivation of employment, profession or means of livelihood. The inclusion of this question in the New Jersey teachers' application forms is an attempt to circumvent the deletion of such a provision, by the courts and by the legislature, from the 1949 [] Oath of Allegiance.
This contention has not been specifically presented to us on this appeal. Appellant did not pursue this point in his brief or oral argument before this court. The State does not pursue the issue. The Law Division judge did not rule on the validity of such an application question, or whether such an answer is actually required, as appellant urges, or how the responses are administered, if required. Accordingly, it is inappropriate for us to speculate if its utilization, as applied, might run afoul of the ruling in Elfbrandt or the New Jersey legislative policy reflected in the deletion of the 1949 amendment to N.J.S.A. 41:1-1, -3 in 1971. There is no provision in the State Administrative Code for a uniform application form for teachers or substitutes.